# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 23, 2024

Lyle W. Cayce
Clerk

No. 22-60603

Glen Pace,

*Plaintiff—Appellant*,

*versus*

Cirrus Design Corporation, *Individually and*, *doing business as* Cirrus Aircraft Corporation; Continental Motor Corporation; Amsafe; Arapahoe Aero,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 2:22-CV-46

---

Before Smith, Southwick, and Higginson, *Circuit Judges*.

Leslie H. Southwick, *Circuit Judge*:

Glen Pace appeals the dismissal of his claims against multiple corporate defendants for the personal injuries he suffered from the crash of a single-engine, general aviation airplane he was piloting. Pace filed this suit in Mississippi state court, but it was later removed to federal district court. The district court held the two Mississippi defendants were improperly joined, which allowed removal, and then dismissed the claims against the out-of-state defendants for lack of personal jurisdiction. We AFFIRM.

No. 22-60603

## FACTUAL AND PROCEDURAL BACKGROUND

On November 22, 2019, Pace was piloting a Cirrus SR22T aircraft owned by Martin Aviation, LLC when it crashed in Smith County, Texas. He had no passengers. Pace's flight began in Hattiesburg, Mississippi, continued to multiple Texas stops, and was to return to Hattiesburg. The crash occurred during the aircraft's flight between Terrell, Texas, and Gladewater, Texas, when several components of the aircraft allegedly malfunctioned. Pace, a Mississippi resident, suffered several severe injuries from the crash.

Pace filed suit in a Mississippi state circuit court in November 2021. He asserted multiple claims against corporate defendants Cirrus, Continental, Amsafe, and Apteryx, Inc.[1] Cirrus allegedly manufactured the aircraft and its emergency parachute. Continental is the alleged manufacturer of the aircraft's engine. Amsafe is the alleged manufacturer of several safety features on the aircraft: seatbelts, shoulder harnesses, and inertial reels. Apteryx allegedly maintained, overhauled, rebuilt, and/or repaired the aircraft and/or its engine. None of these corporate defendants are Mississippi-based.

Pace amended his complaint in January 2022 to add four claims of negligence and misrepresentation against Wade Walters, individually and doing business as Performance Aviation, LLC. Walters is a resident of Mississippi, and Performance Aviation is a Mississippi limited liability company. They owned the aircraft from February 2014 until October 2017. Walters and Performance Aviation lost possession of the aircraft in 2016 when it was seized as part of a forfeiture action against Walters. Martin Aviation purchased the aircraft at a court-sanctioned sale in October 2017 and remained the registered owner until the crash.

---

[1] Pace named Arapahoe Aero in his complaint, but that party alleges its correct legal name is Apteryx. We will refer to "Apteryx."

No. 22-60603

The non-Mississippi corporate defendants filed a notice of removal in April 2022, removing the action to the United States District Court for the Southern District of Mississippi. These defendants alleged Walters and Performance Aviation had been fraudulently joined and diversity jurisdiction existed. Pace sought remand to state court, arguing he had viable claims against the Mississippi defendants. The district court held Pace failed to state a claim against either in-state defendant and there was fraudulent misjoinder.

The diverse corporate defendants also filed motions to dismiss for lack of personal jurisdiction. Pace requested jurisdictional discovery and filed oppositions to each motion. The district court found that it lacked personal jurisdiction over the corporate defendants, granted each motion to dismiss, and denied Pace's motion for jurisdictional discovery. Pace timely appealed.

## DISCUSSION

On appeal, Pace argues the district court erred in three ways: (1) finding the two Mississippi defendants were fraudulently joined; (2) determining it did not have personal jurisdiction over the non-Mississippi, corporate defendants; and (3) denying Pace jurisdictional discovery.

A district court's denial of remand and determination of personal jurisdiction are both reviewed *de novo*. *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 311 (5th Cir. 2002). A district court's ruling on a remand motion "under the fraudulent joinder doctrine" is also reviewed *de novo*. *Johnson v. Heublein Inc.*, 227 F.3d 236, 240 (5th Cir. 2000).

We now discuss each of Pace's contentions.

I.  *Fraudulent joinder of the Mississippi defendants*

Pace argues the Mississippi defendants were properly joined based on plausible negligence and misrepresentation claims. The validity of the

3

district court's decision that they were improperly joined turns on whether Pace sufficiently pled at least one viable cause of action against either Walters or Performance Aviation.

Defendants may remove a civil action brought in state court to federal court if the action is within a federal court's original jurisdiction. 28 U.S.C. § 1441(a). The removal statute is strictly construed, with doubts "resolved in favor of remand." *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008). Defendants may remove an action based on diversity jurisdiction only if there is complete diversity between all named parties, "and no defendant is a citizen of the forum State." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 84 (2005). If a non-diverse defendant is fraudulently joined, however, the citizenship of that party can be ignored. *Williams v. Homeland Ins. Co. of New York*, 18 F.4th 806, 812 (5th Cir. 2021). "[W]e have recognized two ways to establish improper joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (*en banc*). Only the second way is relevant to this appeal.

An in-state defendant is fraudulently joined when the moving "defendant has demonstrated that there is no possibility" the plaintiff can recover against the in-state defendant. *Id.* One method courts utilize to determine fraudulent joinder is to review the allegations within the complaint under "a Rule 12(b)(6)-type analysis." *Id.* If there is a possibility that, when looking at the facts and inferences in a light most favorable to the plaintiff, the plaintiff could succeed in establishing a claim against the defendant, the defendant's citizenship must not be disregarded. *Great Plains Tr. Co.*, 313 F.3d at 311.

The district court addressed three claims against the Mississippi defendants: breach of contract, fraudulent misrepresentation, and negligence. Only the misrepresentation and negligence claims are disputed.

### a. Fraudulent misrepresentation

Because Pace's misrepresentation claim "sound[s] in fraud," we assume, as did the district court, that his claim was for fraudulent misrepresentation. *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 369 (5th Cir. 2001). Under Mississippi law, fraudulent misrepresentation requires:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of the truth; (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on the truth; (8) his right to rely thereon; and (9) his consequent and proximate injury.

*Elchos v. Haas*, 178 So. 3d 1183, 1198 (Miss. 2015).

The claimed fraudulent misrepresentation here is the prior owner's assertion, in some manner, that the aircraft did not have the defects that caused Pace's injuries. The district court found Pace's allegations failed to meet either the Mississippi or the federal pleading standard.

The federal standard is found in Federal Rule of Civil Procedure 9(b):

> Fraud or Mistake; Conditions of Mind. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Rule 9(b)'s heightened pleading requirements apply when a plaintiff's misrepresentation claim "sound[s] in fraud." *Lone Star Ladies Inv. Club*, 238 F.3d at 368–69. Because Pace's misrepresentation claims are based on alleged false statements, he must satisfy Rule 9(b)'s heightened pleading. *Id.*

No. 22-60603

This rule does separate pleading the factual circumstances of the fraud from pleading the state of mind. As to the circumstances supporting fraud, we have held that they must be alleged with particularity. *United States v. Bollinger Shipyards, Inc.*, 775 F.3d 255, 260 (5th Cir. 2014). The district court called this the "who, what, when, where, and how of the fraud or misrepresentation," which is a fair characterization. We do not find any discussion of the pleading of "conditions of a person's mind" in the district court's opinion. FED. R. CIV. P. 9(b). The less demanding pleading standard that applies to that is not the reason the court found Pace's complaint inadequate. It was instead because Pace failed to allege a misrepresentation or false information with particularity.

The district court also held the state pleading requirements were not satisfied. We need not review that holding, because even in a diversity suit in which state law controls the merits of a claim, federal pleading standards apply. *Weatherly v. Pershing, LLC*, 945 F.3d 915, 925 (5th Cir. 2019) (citing *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)). It is true that the live complaint was filed in state court *before* removal, but federal pleading rules applied *after* removal. To the extent a state complaint does not meet federal standards, a motion to amend to meet those standards can be filed.

Pace's amended complaint alleges that Walters was responsible for various defects, and that he sold the plane in a non-airworthy condition. The record demonstrates, however, that Walters had little to no involvement with the sale. The United States government seized the plane in a forfeiture action based on Walters' criminal conviction for his involvement in a conspiracy to defraud. An aircraft bill of sale from Walters to Martin Aviation in 2017 was attached to the complaint, but it does not detail how the sale occurred. At the pleading stage, uncertainties arising outside the complaint about what representations Walters could possibly have made will be ignored.

6

No. 22-60603

In considering the sufficiency of the misrepresentation allegations, we first examine the section of the complaint Pace's reply brief cites. The brief summarizes that the amended complaint, on a specific page, alleged that when the plane was sold, "Walters and Performance [Aviation] misrepresented to subsequent pilots that the aircraft was in 'airworthy condition,' despite the fact the Continental aircraft engine, and their component parts, were not airworthy, were defective, and were in an unreasonably dangerous condition." We do not find such claims in the section cited, which contains paragraphs 39 and 40 of the amended complaint. Nonetheless, we did discover in paragraph 31 what we conclude are the allegations on which Pace now relies. We detail some of those allegations.

First, the amended complaint asserts that, among others, Walters and Performance Aviation "inspected, modified, annualled,[2] repaired, rebuilt, overhauled, and installed the Cirrus aircraft, Continental engine, and their component parts and *certified* the Cirrus aircraft, Continental engine, Cirrus emergency parachute," and other possibly defective parts and equipment "as being airworthy, safe, not defective, and not unreasonably dangerous." The next sentence claims: "Contrary to the representations and certifications made in the repair documents, inspection documents, overhaul documents, the annuals, the aircraft logs, the engine logs, and the aircraft and engine maintenance documents by" all the defendants that the aircraft and all relevant parts "were safe, airworthy, and not defective, when actually, the aircraft, the aircraft engine, and their component parts were defective, unsafe, unreasonably dangerous, and unairworthy." Finally, all the defendants were alleged to have "carelessly inspected, modified, repaired, annualled, rebuilt, certified, installed, and/or overhauled the Cirrus aircraft" and the

_____

[2] "Annualled" appears in several allegations. It seems to be a term used to refer to the annual inspection of general-aviation aircraft.

relevant parts, "and falsely represented" that the aircraft and component parts "were airworthy, safe, not defective, and not unreasonably dangerous."[3]

None of those allegations separately identify the roles of individual defendants and, specifically for our issue, do not explain how Walters or Performance Aviation "certified" or "represented" anything relating to the plane to Pace. We explained earlier that Pace filed his initial and amended complaint in state court. There is no purpose for us to explore whether such allegations generally against all defendants would have sufficed in Mississippi state court. Our issue is whether they satisfy Rule 9(b).

Pace contends the district court applied an impossible standard when it relied on Rule 9(b)'s heightened pleading standard and required him to allege he was the "hearer" of the misrepresentations. Further, Pace argues the district court completely ignored that he read the false statements in the aircraft logs, and his reading the statements was sufficient to survive a motion to dismiss.

Even though the district court did not mention in its decision that Pace would have read the allegedly fraudulent information, reading the misrepresentation is only one element of the claim. The critical element of misrepresentation is the false statement itself, and Pace needed to offer more than "[t]hreadbare recitals of the elements . . . [or] mere conclusory statements" of falsity to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

_____

[3] Other paragraphs of the amended complaint assert that Walters and Performance Aviation "represented" the safety of the aircraft, but what we have excerpted here are the only efforts to explain how the defendants made those representations.

To the contrary, Pace asserts fraud can be pled generally, and "a sketch of the fraud . . . and when and where the claims occurred" is sufficient to establish fraudulent misrepresentation, citing *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185–86 (5th Cir. 2009). A "sketch" can vary in detail, and we seek a clear picture of what that means. The *Grubbs* opinion does not use the word "sketch," instead explaining "without apology" that Rule 9(b) imposes a heightened pleading requirement:

> In cases of fraud, Rule 9(b) has long played that screening function, standing as a gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later. We apply Rule 9(b) to fraud complaints with "bite" and "without apology," but also aware that Rule 9(b) supplements but does not supplant Rule 8(a)'s notice pleading. Rule 9(b) does not "reflect a subscription to fact pleading" and requires only "simple, concise, and direct" allegations of the "circumstances constituting fraud," which after *Twombly* must make relief plausible, not merely conceivable, when taken as true.

*Grubbs*, 565 F.3d at 185–86 (footnote citations omitted) (referring to *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In *Grubbs*, the court held the requirements of heightened pleading are "context specific and flexible and must remain so to achieve the remedial purpose of the False Claim[s] Act." *Id.* at 190. The context was a False Claims Act pleading, and what concerned the court was that "[t]he particular circumstances constituting the fraudulent presentment are often harbored in the scheme." *Id.* For that case's specific purposes, the court held that "if [the relator's complaint] cannot allege the details of an actually submitted false claim, [it] may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id.*

For our purposes, the context of a False Claims Act lawsuit is not the proper analogy. Pace's complaint alleges a variety of entities with a variety of connections to a specific aircraft misrepresented its condition as a whole and of component parts that later allegedly failed. We see no hidden scheme here but instead a series of identified transactions with identified documentation. If only speculation connects a defendant to any misrepresentations, that is not a plausible claim. *Twombly*, 550 U.S. at 555.

Pace does not allege any direct involvement with Walters and Performance Aviation. At best, Pace is alleging that during the period of those defendants' ownership, logbooks and other records were falsely maintained. No document attached to the complaint shows a representation by Walters of airworthiness or anything else. There is a completed Federal Aviation Administration ("FAA") form applying for a certificate of airworthiness, but it is signed by Cirrus without any reference to Walters or Performance Aviation. There also is an application made in 2014 by Walters and Performance Aviation to register as the owner of the airplane with the FAA. The only other document involving Walters or Performance Aviation is the previously mentioned bill of sale from 2017, which shows when Martin Aviation became the new owner.

Therefore, neither by allegation nor supportive exhibit does the complaint show with specificity how Walters or Performance Aviation misrepresented anything. Pace failed to (1) allege a connection between either Mississippi defendant to the airworthiness certifications, and (2) identify a specific misstatement made by Walters or Performance Aviation.

The fraudulent misrepresentation claim was thus not sufficiently pled against the Mississippi defendants.

No. 22-60603

### b. *Negligence*

The district court held Pace also failed to assert a negligence claim because he could not establish the required duty element. A plaintiff ultimately must prove each element of negligence — duty, breach, causation, and injury — to recover damages. *Mississippi Dep't of Mental Health v. Hall*, 936 So. 2d 917, 922 (Miss. 2006). If any one element is not established, the claim fails. *See id.* Pace argues, and the district court acknowledged, that the duty owed by Walters and Performance Aviation would be derived from the FAA regulations, specifically 14 C.F.R. §§ 91.403(a) and 91.405.

The district court determined the duty assigned under these regulations "appear[ed] to be [on] the current owner or operator." The only authority the district court discovered was from an intermediate Illinois state court. *See South Side Tr. & Sav. Bank of Peoria v. Mitsubishi Heavy Indus.*, 927 N.E.2d 179 (Ill. App. Ct. 2010). More importantly, the district court reasoned that the plain meaning of these FAA regulations requires the duty to maintain and inspect an aircraft lie with the current owner, not the previous owner. The duty Walters and Performance Aviation did owe was to Martin Aviation, not Pace, and passed through the October 2017 sale, ceasing to exist when their ownership ended.

Pace contends the district court erroneously relied on this "irrelevant" caselaw rather than Mississippi's adoption of the FAA regulations.[4] He argues that *South Side Trust* was solely an application of Illinois law. Mississippi, he argues, adopted the entirety of Sections 91.403(a) and 91.405 in

---

[4] Pace argued that the RESTATEMENT (SECOND) OF TORTS § 388 applies to this claim, but the district court refused to address the merits of that argument because Pace did not timely raise the argument in the proper pleading. The district court did not err, nor do we, in declining to address this argument. *See United States v. Jackson*, 426 F.3d 301, 304 n.2 (5th Cir. 2005).

11

Mississippi Code §§ 61–1–3 and 61–11–1. Pace argues those statutes allegedly treat owners like pilots, protect the public from their negligence, and do not narrow the duty to only "the plane's current owner at the time of the accident." Because Walters had exclusive control as owner from 2014 to 2017, Pace argues he had a duty to maintain the aircraft, and noncompliance with Section 91.403(a) is evidence of a breach of that duty.

Perhaps Pace cites these statutes to establish a negligence *per se* duty, which can be shown if a statute creates a standard of care. That possibility has not been briefed, and we need not explore the caselaw. The key point Pace wishes us to accept is that the Mississippi statutes extend negligence liability far more broadly than just to the current owner or authorized user. We do not see any support for that argument in these state statutes. One statute provides that it is "unlawful for any person to operate an aircraft in the air or on the ground or water, while under the influence of intoxicating liquor, narcotics or other habit-forming drug, or to operate an aircraft in the air or on the ground or water, in a careless or reckless manner." Miss. Code Ann. § 61–11–1(1). Obviously, Pace's injuries in this case do not arise from Walters' or Performance Aviation's violating this Mississippi statute. We now examine the cited FAA regulations to determine their applicability.

When interpreting regulations, this court begins and may end with the plain language. *United States v. Fafalios*, 817 F.3d 155, 159 (5th Cir. 2016). One cited regulation states: "The owner or operator of an aircraft is primarily responsible for maintaining that aircraft in an airworthy condition." 14 C.F.R. § 91.403(a). Another provides that "[e]ach owner or operator" retains certain maintenance duties. § 91.405. The Mississippi defendants, however, no longer had ownership rights and were not operators at the time of Pace's crash.

The only two courts that have interpreted these FAA regulations held that Sections 91.403 and 91.405 imply a duty of maintenance only to *current* owners of an aircraft. *See South Side Tr.*, 927 N.E.2d at 189–90*; Raffile v. Exec. Aircraft Maint.,* No. CV12-0365, 2012 WL 4361409, at *5 (D. Ariz. Sept. 25, 2012). Both the *South Side Trust* and *Raffile* courts analyzed negligence claims against former owners of aircraft that crashed. In *South Side Trust*, the aircraft in question was sold by the defendant two months prior to the crash. 927 N.E.2d at 185. The aircraft in *Raffile* was sold the day before the crash. 2012 WL 4361409, at *1.

As in this case, ownership of both aircraft ended prior to the crash, but, unlike the short periods between the sales and crashes in those cases, Walters' ownership ended two years prior to the 2019 crash. Both the Arizona and Illinois courts ruled that the FAA regulations do not imply a continuing duty on previous owners. *Id.* at *5; *South Side Tr.*, 927 N.E.2d at 189–90. Instead, a maintenance responsibility of airworthiness is imposed only on "the current owner rather than the past owner." *South Side Tr.*, 927 N.E.2d at 189.

We have summarized these two decisions but do not rely on them. We agree, though, that the text of these federal regulations is most reasonably interpreted as not imposing the continuing liability on former owners and operators for whatever maintenance shortcomings may have existed during their prior ownership or use. This means Pace failed to plead viable negligence claims against the Mississippi defendants.

There are no valid claims pled against Walters or Performance Aviation. Thus, remand to state court was properly denied. We now examine whether there was personal jurisdiction over the diverse defendants.

No. 22-60603

## II.   *Personal jurisdiction over the corporate defendants*

For a court to issue a binding judgment against a defendant, it must have both subject matter and personal jurisdiction over the defendant. *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 231–32 (5th Cir. 2012).  A district court has personal jurisdiction over a nonresident defendant if the forum's long-arm statute creates personal jurisdiction over the defendant and this exercise of personal jurisdiction comports with federal due process.  *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002).  Here, the district court found that Pace failed to meet the required burden of proving either component of personal jurisdiction over the corporate defendants.  We review the district court's decision.

### a.  *Mississippi's long-arm statute*

Mississippi's long-arm statute authorizes personal jurisdiction over a nonresident defendant in three situations: if the defendant (1) makes a contract with a resident of Mississippi to be performed in whole or in part in Mississippi; (2) commits a tort in whole or in part in Mississippi; or (3) conducts any business or performs any character of work in Mississippi.  Miss. Code Ann. § 13–3–57.  "Satisfaction of any of the three prongs, be it through contract, tort, or doing business, establishes personal jurisdiction over a nonresident corporation."  *Adara Networks Inc. v. Langston*, 301 So. 3d 618, 623 (Miss. 2020).

### i.   *Entering a contract*

The district court accepted each corporate defendant's affidavit declaring it is not a party to any contract with Pace.  Facts asserted by defendants in their affidavits that are undisputed by factually supported allegations in a plaintiff's affidavit are taken as true.  *Black v. Acme Mkts., Inc.*, 564 F.2d 681, 683 n.3 (5th Cir. 1977).

14

No. 22-60603

Pace presents no facts, merely conclusory statements, that there is contract liability here to contradict the defendants' affidavits. Without facts directly contradicting the defendants' affidavits, the district court correctly relied on the corporate defendants' affidavits as true and found there was no contract that could support long-arm jurisdiction.

### ii.    Committing a tort

The district court rejected the possibility of the commission of a tort in Mississippi because the plane crash, any equipment failure, and the injuries all occurred in Texas. The district court specifically determined that Pace failed to allege any facts to demonstrate how the tort's effects were felt in Mississippi.

One authority on which Pace relies to combat this determination also involved an out-of-state plane crash. *See Breedlove v. Beech Aircraft Corp.*, 334 F. Supp. 1361 (N.D. Miss. 1971). That decision allowed a Mississippi resident to bring a tort action against nonresident defendants stemming from an Arkansas plane crash, but the claim was based on strict liability related to a defectively designed product's placement in the stream of commerce. *Id.* at 1365. Pace's claims are those of negligent repair, service, and inspection by all defendants, and "defective and unreasonably dangerous" products whose conditions were "hidden and concealed." His claims do not sound in strict liability and are thus distinguishable from *Breedlove*. Instead, Pace contends this tortious conduct existed by alleging only that the aircraft and restraint systems must have been defective.

It is undisputed that any alleged conduct committed by the corporate defendants occurred outside Mississippi. Apteryx performed a required 50-hour inspection of the aircraft at its Colorado facility, where the aircraft was picked up. Continental's engine design, manufacturing, and certification occurred in Alabama, and delivery of said engine occurred in Minnesota.

15

Amsafe's safety parts were manufactured in Arizona and delivered to Minnesota. Cirrus then designed, manufactured, sold, and delivered the aircraft in Minnesota. The aircraft subsequently crashed in Texas.

Pace contends the Mississippi long-arm statute's application to a tort committed in the state includes torts committed outside the state that result in foreseeable effects in Mississippi. *See First Miss. Nat'l Bank v. S&K Enters. of Jackson, Inc.*, 460 So. 2d 839, 843 (Miss. 1984). Pace argues the tort does not have to occur *entirely* in Mississippi when the long-arm statute only requires *part* of the tort to do so. Indeed, the Mississippi Supreme Court has recognized that injuries and damages are a factor that can establish that a tort occurred at least in part in Mississippi. *See Flight Line, Inc. v. Tanksley*, 608 So. 2d 1149, 1156–57 (Miss. 1992). For purposes of the tort prong of Mississippi's long-arm statute, an injury caused to a Mississippi resident within Mississippi will subject a nonresident defendant to personal jurisdiction because "[a] tort is not complete until the injury occurs." *Smith v. Temco, Inc.*, 252 So. 2d 212, 216 (Miss. 1971). Pace's medical treatment, which was extensive and expensive, did occur while he was in Mississippi. Is treatment for injury enough, though, to constitute an injury in Mississippi for purposes of personal jurisdiction?

The corporate defendants argue these damages do not constitute an actual injury felt in the state of Mississippi as defined for purposes of personal jurisdiction. We agree. Here, the tort was completed in Texas when Pace suffered his injuries from the plane crash. Pace is seeking to extend the injury element of a tort into "its resultant consequences, such as pain and suffering, economic effects or other collateral consequences that often stem from the actual injury." *Jobe v. ATR Mktg., Inc.*, 87 F.3d 751, 753 (5th Cir. 1996) (Jolly, J.). This court determined "consequences stemming from the actual tort injury do not confer personal jurisdiction." *Id.* Although we cited no Mississippi authority to support the holding, we relied on caselaw from other

states with similar long-arm statutes. *Id.* at 753 n.3. The Mississippi Supreme Court has quoted and endorsed *Jobe*'s language about "collateral consequences" not being a relevant injury, giving an official stamp of approval to Judge Jolly's analysis. *See Dunn v. Yager*, 58 So. 3d 1171, 1184 (Miss. 2011).

Pace's injuries from the crash occurred in Texas. Pace describes his injuries that occurred in Mississippi after the crash as "pain and suffering." These consequences do not support personal jurisdiction. *Id.* While Pace's medical costs and damages may continue in Mississippi as that is his place of residence, his injury that completed the tort occurred "entirely in Texas." The district court, therefore, did not err in finding Pace's resulting damages, economic effects, and pain and suffering in Mississippi to be insufficient to qualify as a tortious effect under the tort prong.

### iii. Doing business

The district court explained that Mississippi's long-arm statute authorizes personal jurisdiction when a defendant does *any* business in the state of Mississippi. *See ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 498 (5th Cir. 2012). Amsafe concedes it does limited business in Mississippi, but the other corporate defendants deny doing any business in the state. The district court again relied on Continental's, Cirrus's, and Apteryx's sworn affidavits to conclude the defendants do not do business within Mississippi. It found that Pace failed to allege "specific facts in a controverting sworn affidavit."

Pace insists each defendant does business in Mississippi. We consider the evidence as to the different defendants except for Amsafe, who concedes conducting some business in the state.

First, Continental. Pace argues Continental does business in Mississippi by (1) emphasizing the presence of its engines in Mississippi through its website and marketing materials; (2) advertising its products and

17

services in Mississippi; (3) performing repairs and maintenance on engines in Mississippi; (4) accepting a substantial sum for the sale of the engine at issue and replacement products; (5) operating fixed base operations to service and inspect its engines; and (6) having 878 Continental engines registered in Mississippi.

Continental's sworn affidavit is evidence that supports the contrary. It asserts that Continental is not licensed to do business in Mississippi; has no registered agents, offices, dealers, bank accounts, addresses, or distributors in Mississippi; and has never paid taxes in Mississippi. Pace alleges that Continental repairs engines and has "fixed based operations" in Mississippi, but there is no evidence of that. Even if aircraft purchasers register the planes or engines in Mississippi, that does not mean Continental is doing business in the state.

As to Cirrus, Pace contends that Cirrus does business in Mississippi because it (1) applied for an FAA U.S. Airworkers Certificate; (2) sold the aircraft at issue to a Mississippi resident; (3) registered said aircraft in Mississippi; (4) had an authorized service center in Madison, Mississippi; (5) had 38 registered Cirrus aircraft in Mississippi; (6) serviced and registered the aircraft at issue in Mississippi since 2014; (7) hangered said aircraft only in Mississippi; (8) advertised its fixed base operators in Mississippi on its website as having the ability to service all its aircraft; and (9) was "so prevalent in Mississippi that it is not unfair to haul Cirrus into" a Mississippi court.

Cirrus presented an affidavit about its operations. Both the affidavit and the original sales document for the aircraft at issue establish the aircraft was manufactured, sold, and delivered to Walters and Performance Aviation in Minnesota. Cirrus obtained its airworthiness certificate prior to the delivery of the aircraft. The remaining allegations are, according to Cirrus,

misplaced because they are based on affidavits presented by persons unaffiliated with Cirrus and its business or discuss repair stations unaffiliated with Cirrus.

Applicable to Continental, Cirrus, and Amsafe, Pace contends that the defendants' advertising "in various aviation publications and on [their] website[s]" qualifies as doing business in Mississippi. A defendants' "highly interactive website[]" is some evidence of doing business in Mississippi. *Fitch v. Wine Express, Inc.*, 297 So. 3d 224, 227–30 (Miss. 2020). The determination "of whether a defendant is 'doing business' within" Mississippi, however, is done "on an *ad hoc* basis." *McDaniel v. Ritter*, 556 So. 2d 303, 308 (Miss. 1989). Here, the only evidence of the defendants' advertising or website traffic is in an affidavit from Pace's attorney. It states, based on the attorney's personal review of the aviation periodicals and websites, that the defendants' products "are marketed worldwide which includes the State of Mississippi." The websites and advertisements also indicate that the defendants' products "can be and are shipped to Mississippi; thereby creating a constant presence in the State of Mississippi." Finally, the websites and advertisements indicate that "shipping of those component parts by Cirrus, Continental, and Amsafe is so common and pervasive that the Defendants cannot state they are not doing business in the State of Mississippi." None of those assertions provide facts other than Mississippi is one part of the entire world reached by these companies' advertisements and products.

What to make of the following assertion in the affidavit needs separate discussion: "The airworthiness pages also represent and advertise that Cirrus, Continental, and Amsafe are available in Mississippi to service the products, repair the products, maintain the products, inspect the products, overhaul the products, and annual the products on a worldwide basis, which includes the State of Mississippi." No exhibits are attached to indicate what is meant by "airworthiness pages," and how the defendants made these

representations on those pages. The only other references in the affidavit to airworthiness concern FAA-issued "Amsafe Airworthiness Directives," copies of which are attached to the affidavit. Some aid in understanding the contention comes from Pace's response to the motion to dismiss, to which counsel's affidavit was an exhibit. Among the assertions there is that evidence of Continental's doing business in Mississippi is "the continuous mailings of airworthiness directives to individuals, owners, and operators of aircraft in Mississippi who have Continental engines in their airplanes." Here, too, the evidence at best supports that the defendants' products are owned by Mississippi residents. None of this constitutes evidence of a "continuing and substantial . . . nature" of activities in Mississippi sufficient to establish "doing business" in Mississippi. *See Ritter*, 556 So. 2d at 309.

Regarding Apteryx, Pace argues "it is uncontested" the company does business in Mississippi by (1) directing its engine overhaul and repair services to Mississippi; (2) repairing Cirrus aircraft and Continental engines in Mississippi; and (3) having Cirrus endorse its work. No evidence to support those claims was offered. Pace also contended Apteryx's service and inspection *offers*, which were directed at whichever states the aircraft and engine are located and where the owner lives, equate to doing business in Mississippi. An affidavit by Apteryx's president, though, states it does not perform services in Mississippi; all its maintenance and repair work is completed at its Colorado facility, and third-party endorsement by Cirrus does not qualify as conduct by Apteryx. Importantly, the work Apteryx performed on any Mississippi resident's aircraft, including the one here, was completed in Colorado.

The district court found these allegations, though asserting each defendant does a type of business in Mississippi, do not rely on specific facts to controvert the affidavits presented by the defendants. Nonetheless, the court acknowledged the doing-business prong of Mississippi's long-arm statute is

broad, authorizing "any character of work" in the state for personal jurisdiction. *ITL Int'l, Inc.*, 669 F.3d at 498 (emphasis omitted). Accordingly, the district court, as an alternative holding, assumed all corporate defendants were doing business in Mississippi.

We do not endorse the district court's assumption, but we will analyze the case based on its effect, which is that Mississippi's long-arm statute creates personal jurisdiction. We now examine whether the exercise of personal jurisdiction satisfies federal due process. *Revell*, 317 F.3d at 469.

### b. Due process

The district court held it had neither specific nor general personal jurisdiction for any corporate defendant. We review that determination.

### i. General jurisdiction

For general jurisdiction to be present, due process requires that a defendant have "sufficiently systematic and continuous" contacts with the forum state, *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986), such that the defendant feels "at home" in the forum state, *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 927 (2011)).

A corporation is at home where its place of incorporation and its principal place of business are located. *Id.* at 137. General jurisdiction can also be present when "exceptional" circumstances allow a corporate defendant's operations to "be so substantial and of such a nature as to render the corporation at home in" the forum. *Id.* at 139 n.19. We have recognized these exceptional circumstances are "incredibly difficult to establish." *Frank v. P N K (Lake Charles) LLC*, 947 F.3d 331, 336 (5th Cir. 2020).

It is undisputed that none of the defendants are incorporated in or have their principal place of business in Mississippi. Therefore, the district

court ruled there was no personal jurisdiction over any corporate defendant. Because Amsafe is the one defendant registered to do business in the state, Pace argues it had, by operation of law, consented to suit in Mississippi, even under general jurisdiction. To support that argument, Pace cites *Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122, 134–35 (2023). Pace contends *Mallory* specifically authorized general jurisdiction over Amsafe because it is registered to do business in Mississippi under its foreign corporation registration laws.

To analyze this argument, we start with Mississippi's statutory requirements for foreign corporations to register to do business within the state. Miss. Code Ann. § 79–4–15. One such requirement is to have an agent registered for service of process on the corporation. § 79–4–15.03(5). Once a corporation is registered, it becomes "subject to the same duties, restrictions, penalties and liabilities now or later imposed on, a domestic corporation of like character." § 79–4–15.05(b).

The Supreme Court a century earlier discussed such statutes in *Pennsylvania Fire Insurance Co. of Philadelphia v. Gold Issue Mining & Milling Co.*, 243 U.S. 93 (1917). Missouri required any company licensed to do business in the state to name a person with the power of attorney to consent that service of process on that person would suffice for service on the company in any suit. *Id.* at 94. In *Mallory*, the Court later held that Pennsylvania's registration requirements for corporations that included explicit consent to general jurisdiction did not violate due process by authorizing consent through registration. 600 U.S. at 134–36. *Mallory* analyzes what a state *may* require; we still must examine the state law to find what it *does* require.

Mississippi law does not follow the consent-by-registration doctrine. The Mississippi Registered Agents Act provides that a registered agent of an entity is authorized to receive service of process of any notice to the entity

and then forward that service to the entity itself. Miss. Code Ann. §§ 79–35–13, 79–35–14. Nonetheless, "[t]he appointment or maintenance in [Mississippi] of a registered agent does not by itself create the basis for personal jurisdiction over the represented entity in this state." § 79–35–15. This establishes that Mississippi explicitly negates consent-by-registration. *See* Jeffrey L. Rensberger, *Consent to Jurisdiction Based on Registering to Do Business: A Limited Role for General Jurisdiction*, 58 SAN DIEGO L. REV. 309, 324 (2021) (agreeing that Mississippi law does not make the naming of a registered agent a consent to suit).

Nothing in *Mallory* or *Pennsylvania Fire* supports that due process requires a state to assume personal jurisdiction over a corporation that has a registered agent. It is constitutional for a state not to do so. Thus, even though Amsafe is registered to do business in Mississippi, consent-by-registration does not apply. Also, the evidence shows that Amsafe, like the other corporate defendants, lacks sufficient contacts to be "at home" in Mississippi. The district court correctly determined that all the corporate defendants, including Amsafe, are not subject to general jurisdiction in Mississippi.

### ii.    Specific jurisdiction

The district court held that it did not have specific jurisdiction over any corporate defendant because Pace "did not establish a cause of action under either [the contract or tort prong] of the long arm statute that could give rise to specific jurisdiction." It relied on our *Holt Oil* opinion to conclude that specific jurisdiction requires a specific act to occur in the forum, and only the contract and tort prongs, not the doing-business prong, can supply that specific act. *See Holt Oil*, 801 F.2d at 777–79.

This court stated in *Holt Oil* that specific jurisdiction requires an "affirmative act" by the defendant in the forum. *Id.* at 777. We do not interpret "affirmative act" in the same way as the district court, though. Elaborating

in the next sentence of the opinion, we examined "whether the nonresident has purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Id.* Due process requires minimum contacts by the defendant directed at the forum for specific jurisdiction, *id.*, and Mississippi's long-arm statute does not contain any limitation to suggest doing business cannot be considered an affirmative act by the defendant, Miss. Code Ann. § 13–5–57.

In summary, specific jurisdiction exists when a defendant purposefully avails itself of the privilege of conducting activities within a forum state, the plaintiff's claims arise out of or relate to the defendant's "minimum contacts,"[5] and maintaining the suit would not offend traditional notions of fair play and substantial justice. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358–60 (2021). The Supreme Court rejected that "only a strict causal relationship between the defendant's in-state activity and the litigation will do." *Id.* at 362. The Court's "most common formulation of the rule" for what is required for specific jurisdiction is "the suit 'arise out of or relate to the defendant's contacts with the forum.'" *Id.* (emphasis omitted) (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017)).

Pace argues the corporate defendants' conduct here mirrors that in *Ford* and subjects these defendants to specific jurisdiction. The Supreme Court stated that "Ford extensively promoted, sold, and serviced" the type of products that led to the plaintiffs' injuries in all states, including the forum. *Id.* at 371. Ford argued its sales, advertisements, and services of cars in Montana and Minnesota did not relate to the plaintiffs' claims because the specific

---

[5] Although specific jurisdiction is a three-part analysis under the "minimum contacts" test articulated in *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), we discuss only the types of contacts and "related-to" disputes raised by the parties.

injury-causing cars were manufactured and sold in another state. *Id.* at 361. The Court concluded there was a sufficient link between the injurious products and Ford's contacts for specific jurisdiction because "Ford had systematically served a market in [the forum states] for the very vehicles that [injured] the plaintiffs," and this created "a strong relationship among the defendant, the forum, and the litigation." *Id.* at 365 (quotation marks omitted).

Pace contends each corporate defendant conducted activities similar to Ford's that were sufficient to establish a related-to connection to Mississippi.

Pace alleges that Cirrus (1) sells aircraft and products in Mississippi; (2) directs its business to Mississippi; (3) sold and delivered the aircraft at issue to a Mississippi entity in Mississippi; (4) operates a global network of service centers, including in Madison County, Mississippi; (5) provides flight training for pilots in Mississippi; and (6) the Cirrus aircraft in question was operated almost entirely in Mississippi.  Cirrus provided evidence that there are no Cirrus flight training facilities, offices, employees, or similar activities in Mississippi; and the aircraft was designed, manufactured, certified, sold, and delivered in Minnesota.  We agree with Cirrus that Pace failed to connect the Texas crash either to the "business Cirrus *might* do in Mississippi" or to the business it did with the Mississippi residents who sold the aircraft to a non-party two years prior to the crash.

As to Continental, Pace alleges it (1) sells its engines in Mississippi; (2) directs its sales activities to Mississippi; (3) services and maintains at least 878 aircraft engines in Mississippi; (4) profits from sales in Mississippi; (5) advertises in Mississippi; (6) designed, marketed, sold, and delivered the aircraft engine at issue to a Mississippi resident in Mississippi; and (7) repaired, maintained, and inspected that engine in Mississippi.    The

requirement, though, is that Pace's suit arise out of or relates to a Continental contact with the forum. *Bristol-Myers Squibb*, 582 U.S. at 262.

In *Bristol-Meyers Squibb*, the Supreme Court described this requirement as an "adequate link between the State and the nonresidents' claims." *Id.* at 264. In our case, Pace is a resident of the relevant state, and the needed link is between the state and the specific claims against the nonresident defendants. Without this link, specific jurisdiction will be lacking, regardless of "even regularly occurring sales" or activities within the forum. *Id.* In *Ford*, the plaintiff was injured in the forum states — a key part of the Court's relations-to-claims analysis. 592 U.S. at 365. Continental had no pervasive advertising campaign or significant dealership placement like Ford. The alleged defective design, manufacture, or assembly of the engine occurred in Alabama, and the engine was sold in Minnesota, creating no *de facto* presence in Mississippi sufficient for specific jurisdiction.

Next is Apteryx. Pace alleges Apteryx (1) directs its aviation services and products to Mississippi, (2) deliberately attempts to service and repair Cirrus aircraft with Continental engines in Mississippi, and (3) was the last servicer of the aircraft at issue. According to Pace, these contacts all suggest specific jurisdiction is proper under *Ford*. Due process requires that a plaintiff's injury "evince a connection between" the defendant and the forum state. *Walden v. Fiore*, 571 U.S. 277, 290 (2014). Apteryx's president, like the director of Cirrus, established that Apteryx does not have offices, employees, addresses, etc., in Mississippi. Instead, Pace's claim arose out of work conducted in Colorado when Martin Aviation delivered and later picked up the aircraft for required service. Pace's being a Mississippi-resident pilot of the aircraft is insufficient to establish specific jurisdiction.

Finally, as to Amsafe, Pace alleges the company (1) does substantial business in Mississippi; (2) sells its safety products in Mississippi; (3) sold

the component parts that were in the aircraft at issue; (4) advertises and publishes information about its products to not only Mississippi but the country; (5) has fixed bases of operation in Mississippi for servicing; and (6) its products are found in most aircraft in Mississippi and the country. Amsafe's response is that Mississippi has no connection to the lawsuit. The Amsafe parts were manufactured in Arizona and sold in Minnesota, and the crash and resulting injuries occurred in Texas.

Importantly, the Supreme Court held that California lacked specific jurisdiction over a company even though it engaged in substantial business in the state yet did not "develop . . . [or] create a marketing strategy for . . . [or] manufacture" the product or perform other related activities in the forum. *Bristol-Myers Squibb*, 582 U.S. at 259. There was no jurisdiction because the plaintiffs did not claim they had obtained the injurious drug or were injured by the drug in the state. *Id.* at 264–65. Similarly, the only evidence (as opposed to allegations) here is that Amsafe did not "conduct advertising, solicitation, [or] marketing" in Mississippi. Like the *Bristol-Myers Squibb* plaintiffs, Pace's allegations are not focused on obtaining the products or being directly injured by them in Mississippi, but on the effects of his Texas injury felt in Mississippi. When an accident occurs completely outside the state and has no connection to the state, specific jurisdiction is not present. *See Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 896 (5th Cir. 2022).

Specific jurisdiction does not exist over the corporate defendants considering their uncontroverted affidavits and evidence. While the Supreme Court does not require a strict causal connection to satisfy the related-to element of specific jurisdiction, it "does not mean anything goes" and "incorporates real limits." *Ford*, 592 U.S. at 362. "[P]roof of causation" has never been required, but there must be a strong relationship among the *defendant*, the *forum*, and the *litigation*. *Id.* at 362, 371.

The record here more closely resembles that of *Bristol-Myers Squibb* than that of *Ford*. Yes, the corporate defendants serve the forum, but all their relevant alleged conduct occurred in other states, Pace's injury occurred in Texas, and the only connections to Mississippi related to *this litigation* are Pace's residency and the aircraft's hangering there. The needed relationship for specific jurisdiction is lacking. The district court correctly held it lacked jurisdiction over the defendants.

## III.   *Jurisdictional discovery*

Pace argues that the district court erred in denying his motion for jurisdictional discovery. He contends his motion was specific as to the information sought, and the district court abused its discretion by ruling on the defendants' motions to dismiss before ruling on his motion for discovery. The district court, however, has broad discretion in the type and extent of discovery it permits. *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982).

A district court's denial of jurisdictional discovery is reviewed for abuse of discretion. *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014). The "decision will be reversed only if it is arbitrary or clearly unreasonable." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 428 (5th Cir. 2005). The party seeking discovery must establish its necessity, *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009), and does so by making "clear which specific facts he expects discovery to find," *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 326 (5th Cir. 2021) (quotation marks omitted). "If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts . . . the plaintiff's right to conduct jurisdictional discovery should be sustained." *Fielding*, 415 F.3d at 429 (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)).

The district court found that Pace never asserted specific facts to support his allegations of jurisdiction or that the corporate defendants did business in the forum.  Pace, however, argues his pleadings demonstrated that specific personal jurisdiction was proper and the additional, needed discovery would "more than likely . . . produce the needed facts to further support" jurisdiction.  His "focused and specific" motion for jurisdictional discovery sought, among other things, "maintenance and service records and the delivery records of the Cirrus Aircraft, its engine, the safety restraint system installed in the Cirrus Aircraft, including the AmSafe seatbelt and shoulder harness, the AmSafe inertial reel and airbags, and their component parts."

Although these documents could potentially show Mississippi connections if they existed, Pace does no more than "rely on vague assertions that additional discovery will produce needed, but unspecified facts," which is insufficient to allow jurisdictional discovery. *Freeman*, 556 F.3d at 341–42.  Instead of identifying how these documents would specifically establish the corporate defendants' contacts with Mississippi, Pace requested a broad array of information related to the corporate defendants' businesses, with vague assertions of hope that it would lead to the discovery of unspecified facts that "would likely" establish personal jurisdiction.

The district court did not abuse its discretion by denying Pace's motion for jurisdictional discovery.  Pace was required to present in his jurisdictional discovery request "factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts" the defendants had with Mississippi. *Fielding*, 415 F.3d at 429.  There were no specific facts or reasonable particularity regarding jurisdictional facts presented, thus Pace is not entitled to jurisdictional discovery.

Our decision should not be interpreted as implying a view on the merits of Pace's claims.  AFFIRMED.