**Opinion issued February 19, 2026**



In The

# Court of Appeals

For The

# First District of Texas

_____

### NO. 01-24-00435-CV
_____

**CHARLES AUSTIN, Appellant**

**V.**

**EXTRUDED ALUMINUM CORP., Appellee**

---

**On Appeal from the 458th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 23-DCV-309088**

---

## CONCURRING OPINION

I agree with the majority that this case fails the relatedness prong of specific personal jurisdiction, so the trial court correctly granted Extruded Aluminum Corporation's special appearance. I write separately to seek clarity

on the meaning of the phrase "relate to" in the specific personal jurisdiction analysis.

There is no disagreement that, for a Texas court to exercise specific personal jurisdiction over a nonresident defendant, two prongs must be satisfied:

> (1) the defendant must have taken some act by which it purposefully avails itself of the privilege of conducting activities within Texas, and
>
> (2) the claims asserted against the defendant must "arise out of *or relate to*" the defendant's Texas-focused activities.

*BRP-Rotax GmbH & Co. KG v. Shaik*, 716 S.W.3d 98, 104 (Tex. 2025) (emphasis added).

The phrase "arise out of or relate to" first appeared in *Helicopteros Nacionales de Colombia, S.A. v. Hall*. *See* 466 U.S. 408, 414 (1984). For years, Texas interpreted "arise out of or relate to" as requiring a "substantial connection" between the Texas contacts and the litigation. *See, e.g.*, *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 585 (Tex. 2007).

My concurrence focuses on the "relate to" prong of the specific jurisdiction test. In light of recent developments in the law, what does that term mean? And how does Texas's longstanding "substantial connection" test fit into this inquiry? Litigants and courts would benefit from clarity on these questions.

2

<u>The United States Supreme Court's *Ford* Decision and its Aftermath</u>

In 2021, in *Ford Motor Company v. Montana Eighth Judicial District Court*, the United States Supreme Court instructed that, for purposes of the specific personal jurisdiction's "arise out of or relate to" test, "arise out of" means something different than "relate to." 592 U.S. 351, 362 (2021). The Court explained that, although the "arise out of" inquiry raises a causal question (*i.e.*, "proof that the plaintiff's claim came about because of the defendant's in-state conduct"), the "relate to" prong need not. *See id.* ("None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do.").

Accordingly, the Court explained, "some relationships will support jurisdiction without a causal showing" when the litigation nonetheless relates to the defendant's forum contacts. *Id.* ("The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing."); *see also Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 16 (Tex. 2021) (the United States Supreme Court "has confirmed that due process does not mandate a causation-only approach" to specific jurisdiction).

3

*Ford* cautioned that this articulation of the test "does not mean anything goes." 592 U.S. at 362. Instead, "the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Id.*

But what, in practicality, does this mean? Justice Gorsuch's *Ford* concurrence emphasizes the lack of clear guidance on this point:

> For a case to "relate to" the defendant's forum contacts, the majority says, it is enough if an "affiliation" or "relationship" or "connection" exists between them. But what does this assortment of nouns *mean*? . . . The majority promises that its new test "does not mean anything goes," but that hardly tells us what does.

*Id.* at 376 (Gorsuch, J., concurring) (citation omitted) (emphasis in original). Justice Alito's does, too. *Id.* at 374 (Alito, J., concurring) (observing that majority opinion says there are "real limits" to the "relate to" requirement— "[b]ut without any indication what those limits might be, I doubt that the lower courts will find that observation terribly helpful").[1]

As the majority opinion here notes, courts nationwide are currently fleshing out the meaning of relatedness under *Ford*. For instance, the Ninth Circuit looked to how courts had been applying *Ford* and suggested that

---

[1] In his concurrence, Justice Alito also explained the following: "[W]e merely follow what we said in [*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–298 (1980)], which was essentially this: If a car manufacturer makes substantial efforts to sell vehicles in States A and B (and other States), and a defect in a vehicle first sold in State A causes injuries in an accident in State B, the manufacturer can be sued in State B. That rule decides these cases." 592 U.S. at 373 (Alito, J., concurring).

"relatedness requires a close connection between contacts and injury." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 506 (9th Cir. 2023) (noting that, "to give 'relate to' too broad a scope would risk collapsing the core distinction between general and specific personal jurisdiction" (cleaned up)).

The Seventh Circuit recently described its view as: "There must be an adequate connection between the defendants' activities in the forum and the suit," and "one of the limits of the 'relates to' prong is the concept of fair warning—knowledge that a particular activity may subject the defendant to the jurisdiction of a foreign sovereign." *Schoeps v. Sompo Holdings, Inc.*, 160 F.4th 815, 828 (7th Cir. 2025) (cleaned up). That case involved a lawsuit against a foreign corporate subsidiary (whose Illinois-based affiliate sold insurance) to recover a Vincent van Gogh painting. *Id.* at 820–21. Plaintiffs argued that relatedness was satisfied for jurisdiction in Illinois: they asserted that "insurance sales are related to [the painting] because the defendants use [the painting] to market their business." *Id.* at 829. The court disagreed. It reasoned that "[i]f such were the rule, then specific personal jurisdiction would exist over a corporation anywhere it did any business because its business would 'relate to' all other acts of the corporation"—a result that could not be squared with *Ford* and other precedent. *Id.*; *see also B.D. ex rel. Myers v. Samsung Sdi Co., Ltd.*, 143 F.4th 757, 770–71 (7th Cir. 2025) (stating that,

5

although the "Supreme Court has provided precious little guidance on how strong the link must be," "[c]ourts must scrutinize the relationship between in-state contacts and lawsuits to police the boundary between the two types of personal jurisdiction. The looser the connection becomes, the more an exercise of specific personal jurisdiction will start to look like one of general personal jurisdiction").

The Fifth Circuit, in turn, has said that, under *Ford*, "there must be a strong relationship among the defendant, the forum, and the litigation." *Pace v. Cirrus Design Corp.*, 93 F.4th 879, 901–02 (5th Cir. 2024) ("The needed relationship for specific jurisdiction is lacking.").

Moreover, in grappling with questions concerning personal jurisdiction after *Ford*, the Fifth Circuit recently went back-and-forth in a conclusion about jurisdiction. In *Ethridge v. Samsung SDI Co., Ltd.*, the Fifth Circuit (in a later-withdrawn opinion) initially held that specific personal jurisdiction existed over a foreign battery manufacturer (Samsung). 137 F.4th 309, 315, 317–18 (5th Cir. 2025), *opinion withdrawn and superseded on reh'g*, 163 F.4th 136 (5th Cir. 2025). In that opinion, the court described *Ford* as adopting the following rule on "relatedness": "Where the defendant sold a non-insignificant volume of product in the forum State, an in-state plaintiff's suit involving the

6

in-state use of and in-state injury from the same product will satisfy the relatedness condition of specific personal jurisdiction." *Id.* at 315.

Just a few months later, the court withdrew its opinion and instead went the other way—following the Seventh Circuit's reasoning in a nearly identical case that had had the benefit of jurisdictional discovery. *Ethridge v. Samsung SDI Co., Ltd.*, 163 F.4th 136, 137–39 (5th Cir. 2025) ("[O]n the record before us, we agree with the Seventh Circuit that Ethridge has not satisfied *Ford*'s standard for personal jurisdiction." (citing *Myers*, 143 F.4th at 757)). The Fifth Circuit explained: "It is enough to say that Samsung affirmatively limited its contacts to approved manufacturers in Texas, and Ethridge has not shown that his injuries are related to those contacts." *Id.* at 139. Moreover, the court continued, there was "no link between Samsung's sales of goods to manufacturers and the plaintiff's injuries, which arose from a direct-to-consumer purchase and involved distribution channels that Samsung did not participate in and never authorized." *Id*. (quoting *Ethridge*, 137 F.4th at 324 (Jones, J., dissenting)). The court ultimately concluded that "*Ford* does not authorize States to exercise personal jurisdiction over out-of-state defendants

7

because of the unilateral acts of plaintiffs or third parties." *Id.* (quoting *Ethridge*, 137 F.4th at 324 (Jones, J., dissenting)).[2]

In the wake of this law, the question remains: What exactly does "relate to" mean? The United States Supreme Court has not yet offered guidance beyond its discussion in *Ford*.

Texas's Law after *Ford*

Immediately after *Ford*, the Texas Supreme Court decided a personal jurisdiction case: *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1 (Tex. 2021). That case was similar to *Ford*—and the Texas Supreme Court reached a similar conclusion, holding that, "[b]y requiring a direct causal connection between SprayFoam's additional conduct and the lawsuit, the court of appeals utilized too exacting a standard, one that the Supreme Court in *Ford Motor Co.* reiterated is not required to pass constitutional muster." 625 S.W.3d at 16–18 & n.5 ("Ford's causation-only approach finds no support in this

---

[2] State courts have also been grappling with what "relate to" means. *See, e.g., Barfell v. Freeman Health Sys.*, 579 P.3d 591, 597–98 (Okla. 2025) (trial court erred because although trial court "found the suit did not 'arise out of' the Respondents' contacts with Oklahoma, it did not answer the question whether the Respondents' contacts with Oklahoma 'relate to' the suit"); *Baskin v. Pierce & Allred Constr., Inc.*, 676 S.W.3d 554, 576–80 (Tenn. 2023) (conducting a "relate to" analysis under *Ford* and concluding "Defendant's Tennessee activities associated with the cabin project and the Bradley project were not sufficiently related to the Plaintiff's claims to support the exercise of specific jurisdiction over the Defendant in this case").

Court's requirement of a 'connection' between a plaintiff's suit and a defendant's activities." (quoting *Ford*, 592 U.S. at 361)).

But, in doing so, the Court declined to reach whether Texas's longstanding "substantial connection" test—which requires a substantial connection between the Texas contacts and the lawsuit—"exceeds the bounds of due process" post-*Ford. Id.* at 16 n.5 ("The Lucianos argue that *Ford Motor Co.* confirms our 'substantial connection' standard presented in *Moki Mac . . . .* But we need not address that argument today.").

As the Texas Supreme Court explained, "[o]ur holding today rests on the Supreme Court's analysis in *Ford Motor Co.*—a case whose factual circumstances resemble[ ] those before us." *Id.* As such, the Court continued, "we need not determine whether our 'substantial connection' standard exceeds the bounds of due process because here the due-process standard is necessarily met." *Id.*[3]

---

[3] Texas courts may exercise personal jurisdiction over a nonresident defendant if it is (1) authorized by the Texas long-arm statute, and (2) consistent with federal due-process guarantees. *LG Chem Am., Inc. v. Morgan*, 670 S.W.3d 341, 346 (Tex. 2023). According to the Texas Supreme Court, our "long-arm statute reaches as far as the federal constitutional requirements for due process will allow." *State v. Volkswagen Aktiengesellschaft*, 669 S.W.3d 399, 412 (Tex. 2023) (quoting *Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex. 2010)).

The Texas Supreme Court reached a similar conclusion in *State v. Volkswagen Aktiengesellschaft*, explaining that "[b]ecause the State's after-sale tampering claims clearly arise out of the recall and service tampering itself—a direct causal relationship connects the litigation to the contacts—we need not determine whether the substantial connection standard articulated in our precedent exceeds the bounds of due process." 669 S.W.3d 399, 431 n.139 (Tex. 2023) (cleaned up) (quoting *Luciano*, 625 S.W.3d at 16 n.5).[4]

*Luciano* and *Volkswagen* thus left open what exactly the "relate to" inquiry entails in the post-*Ford* landscape—and on what basis.

Next came *LG Chem America, Inc. v. Morgan* (issued a couple of weeks after *Volkswagen*). 670 S.W.3d 341 (Tex. 2023). There, the Texas Supreme Court again had the opportunity to address personal jurisdiction and the "arise

---

[4]     In *Volkswagen*, the court focused on the "arise out of" prong and did not analyze the meaning or scope of "relate to." *See Volkswagen*, 669 S.W.3d at 431–32, 431 n.139.

Moreover, in *In re Christianson Air Conditioning & Plumbing, LLC*, the Court reviewed a trial court's order compelling jurisdictional discovery, but it did not reach the merits of whether personal jurisdiction existed over the defendant. *See* 639 S.W.3d 671, 674 (Tex. 2022). In discussing whether the proposed deposition topics were proper, the Court reiterated the general Texas rule that, with respect to relatedness, "a plaintiff must demonstrate a substantial connection between the defendant's forum contacts and the operative facts of the litigation." *Id.* at 679 (cleaned up) (quoting *Moki Mac*, 221 S.W.3d at 585).

10

out of or relate to" test. In that case, the Court began with the following description of the law:

> "This so-called relatedness inquiry defines the appropriate 'nexus between the nonresident defendant, the litigation, and the forum.'" [*Luciano*, 625 S.W.3d] at 14 (quoting *Moki Mac*, 221 S.W.3d at 579). Under our precedents, the plaintiff must demonstrate a "substantial connection" between the defendant's contacts and the operative facts of the litigation. *Moki Mac*, 221 S.W.3d at 585.

*Id.* at 347.

The Texas Supreme Court then discussed *Ford*, explained that, under *Ford*, "a plaintiff need not establish a strict causal relationship between the defendant's contacts and the plaintiff's claim," and emphasized (as *Ford* did) that this does not mean that "anything goes." *Id.* (citing *Ford*, 592 U.S. at 362). The Court described *Ford*'s conclusion that the relatedness requirement is satisfied when a company "serves a market for a product in the forum State and the product malfunctions there." *Id.* at 348 (quoting *Ford*, 592 U.S. at 363).

On the facts at issue there, the Court ultimately concluded that relatedness was satisfied:

> The LG Chem defendants undisputedly sold and distributed model 18650 batteries in Texas, and they do not dispute that is the same model battery Morgan alleges injured him in Texas. That is sufficient to satisfy the relatedness prong and establish specific personal jurisdiction in Texas. *Luciano*, 625 S.W.3d at 17; *see Ford*, 592 U.S. at 365 (describing "a strong relationship among the defendant, the forum, and the litigation" as "the essential foundation" of specific jurisdiction (internal quotations omitted));

11

> *Moki Mac*, 221 S.W.3d at 585 (stating that due process is satisfied where there is a "substantial connection" between the defendant's contacts and the operative facts of the litigation).

*Id.* at 349. As this excerpt reflects, in conducting its analysis, the Texas Supreme Court referenced Texas's longstanding substantial connection test. *See id.*; *see also id.* at 347.

Courts across Texas are facing (or will face) questions about the implications of *Ford* and the meaning of "relate to." For instance, in *Conexiones Tornado S. de RL. de CV v. Ramirez de Munoz*, the plaintiffs argued that *Ford* "replaced the Texas Supreme Court's 'outdated precedent' requiring a substantial connection between the plaintiff's claims and the defendant's forum contacts in specific-jurisdiction cases." No. 05-23-00353-CV, 2024 WL 4262405, at *6 (Tex. App.—Dallas Sept. 23, 2024, no pet.). The Dallas Court of Appeals rejected that argument.

In concluding that *Ford* did not "abrogate" the "substantial connection" test, the court pointed to *Ford*'s assertion that, although "relate to" may not require a causal connection, that "does not mean that anything goes"; instead, "relate to" "incorporates real limits." *Id.* (quoting *Ford*, 592 U.S. at 362). The court also reasoned that *Ford* did not "suggest[ ] that the stronger a defendant's forum contacts, the weaker the link may be between those contacts and the plaintiff's claims." *Id. See also Turner Specialty Servs., LLC v. Horn*, No. 01-

22-00031-CV, 2022 WL 16640624, at *8 (Tex. App.—Houston [1st Dist.] Nov. 3, 2022, pet. denied) (stating that, under *Ford*, "in determining whether the suit arises out of relates to a defendant's contacts with the forum, we focus on the connection between the litigation, the defendant, and the forum").

*        *        *

Because *LG Chem America* continued to cite and apply Texas's "substantial connection" test, the majority opinion appropriately did so in this case. After all, *LG Chem America* is the latest statement by the Texas Supreme Court on this inquiry.

But litigants and courts would benefit from clarity as to what exactly "relate to" means, post-*Ford*. We recognize that "[i]t is a perilous project for lower courts to interpret a Supreme Court doctrine that the Justices themselves interpret differently." *Shaik*, 716 S.W.3d at 115 (Busby, J., concurring) (cleaned up) (quoting *Ethridge*, 137 F.4th at 317). And most cases probably do not present close calls that turn on the meaning of "relate to." But some cases will—and clarity would be helpful.[5]

---

[5]    I also note that Justice Gorsuch's concurrence in *Ford* raises compelling questions about personal jurisdiction jurisprudence. How did we get here? Where are we headed? And how is this analysis tied to the original meaning of the Due Process Clause? *See Ford*, 592 U.S. at 379–84 (Gorsuch, J., concurring) (questioning how this jurisprudence is consistent with the Constitution's original meaning and explaining: "The real struggle here isn't with settling on the right outcome in these cases, but with making sense of our

13

Jennifer Caughey
Justice

Panel consists of Justices Rivas-Molloy, Gunn, and Caughey.

Justice Caughey, concurring

---

personal jurisdiction jurisprudence . . . ."); *see also Shaik*, 716 S.W.3d at 112–15, 119 (Busby, J., concurring) (criticizing the United States Supreme Court's "approach to constitutional personal jurisdiction" as a "flawed doctrine" that has produced "disharmony and unpredictability," and urging the Court "to consider the guidance provided by early American practice regarding personal jurisdiction").