**REVERSED and RENDERED and Opinion Filed September 23, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-23-00353-CV**
_____

**CONEXIONES TORNADO S. DE RL. DE. CV, Appellant**
**V.**
**ROSA RAMIREZ DE MUNOZ, INDIVIDUALLY, AND A/N/F OF R.M., A MINOR, VALENTIN GARCIA, ANGELA GARCIA, LILIANA GARCIA, TOMAS GARCIA, HONORIO RESENDIZ, AND ZEFERINO GARCIA, Appellee**

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-19-15810**

## MEMORANDUM OPINION

Before Justices Carlyle, Goldstein, and Breedlove
Opinion by Justice Goldstein

Appellant Conexiones Tornado S. de RL. de CV (Conexiones) appeals the trial court's order denying its special appearance. In four issues, Conexiones complains that the trial court erred because (Issues 1–3) its findings with respect to specific jurisdiction, general jurisdiction, and alter ego were supported by factually and legally insufficient evidence; and (Issue 4) it considered incompetent evidence in support of personal jurisdiction. We reverse the trial court's order and enter judgment dismissing Conexiones for want of personal jurisdiction.

# BACKGROUND

Conexiones is a Mexican bus company operating wholly within Mexico. Tornado Bus Company (Tornado) is a Texas-based company operating within the United States. Conexiones and Tornado have a common owner, Juan Valdez. The two companies have a revenue sharing agreement for international bus trips. When a passenger in Mexico wishes to purchase a ticket to the United States, Conexiones sells the ticket and transports the passenger to the border. The passenger then transfers to a different bus operated by Tornado and is taken to the final destination within the United States. Conexiones then shares a portion of the ticket price with Tornado pursuant to the companies' agreement. This arrangement also works in reverse—a traveler from the United States can purchase a ticket for a trip to Mexico, whereupon he or she will be transported to the border by Tornado and, after a bus transfer at the border, will be taken to the final destination by Conexiones. Although the two companies have a common owner, they do not share employees or equipment. Conexiones does not have any of the licensing required to operate as a common carrier in the United States and does not maintain a registered agent in the United States. However, the two companies share the same branding, the same motto, and similar advertising. Further, Conexiones's website lists "office" locations in both Mexico and the United States, including two offices in Dallas, Texas.

In 2017, Appellees purchased round-trip tickets from Dallas, Texas to destinations in Mexico. Appellee Rosa Ramirez de Munoz testified that she

purchased round-trip tickets in Dallas, Texas for herself and her daughter, Appellee R.M., whom Ramirez de Munoz represents as next friend. The tickets were for a trip from Dallas, Texas to Jalpan de Serra, Mexico, departing on December 18 and returning on December 30, 2017. Our record includes the tickets for the departure trip and the tickets *and* itineraries for the return trip. The return-trip itineraries show that the trip was to take place in four legs as follows:

- Jalpan de Serra, QRO - Rio verde, SLP / Transfer
- Rio verde, SLP - Matehuala, SLP / [Conexiones]
- Matehuala, SLP - Laredo, Texas / [Conexiones]
- Laredo, Texas - Dallas, Texas / [Tornado][1]

Appellee Liliana Garcia testified that she purchased tickets in Dallas, Texas, for herself and her family members, Appellees Valentin, Angela, Tomas, and Zeferino Garcia. Our record includes only the itineraries[2] for the return trip, which took place on December 29, 2017. Like the itineraries for Ramirez de Munoz, these itineraries list the legs of the return trip:

- Rio verde, SLP - Matehuala, SLP / [Conexiones]
- Matehuala, SLP - Laredo, Texas / [Conexiones]
- Laredo, Texas - Dallas, Texas / [Tornado]

---

[1] We understand the initials QRO and SLP to stand for the Mexican states of San Luis Potosi and Querétaro, respectively.

[2] The record contains the return-trip itineraries for Liliana, Valentin, Angela, and Tomas, but not for Zeferino.

–3–

According to Conexiones, the company names listed next to each leg of these trips indicates which company owned and operated the bus for that leg.

On December 29, 2017, the Conexiones bus for the Rio verde-Matehuala leg of the return trip crashed in Matehuala, Mexico after its driver, a Conexiones employee, allegedly fell asleep at the wheel. Appellees were passengers on the bus.[3] On September 29, 2017, they filed suit against Tornado in Dallas County for injuries arising from the bus crash. In its first amended answer, Tornado included a verified denial complaining that there was a defect in the parties. Tornado alleged that it did not own or operate the bus that was involved in the crash. Appellees then filed their first amended petition adding Conexiones as a defendant. Appellees alleged that Tornado is the parent company, or alternatively, an alter ego, of Conexiones.

On January 11, 2021, Conexiones filed a special appearance, which it amended two days later. In the amended special appearance, Conexiones alleged that it was a Mexican company that did not do business, maintain a registered agent, or have any officers or employees based, in Texas. These allegations were supported by the affidavit of its representative, Adriana Lopez, who also testified that Conexiones was a separate entity from Tornado. Appellees filed a response to the

---

[3] We note there is a dearth of evidence relating to appellee Honorio Resendiz. He did not testify at the special-appearance hearing, and neither Rosa Ramirez de Munoz nor Liliana Garcia testified that Resendiz was a family member or that they purchased his tickets. Despite this lack of evidence, Conexiones states in its appellate brief that all Appellees "purchased round trip bus tickets" from Dallas to Mexico. Appellees do not dispute this assertion. We will therefore assume, for the purposes of this appeal, that Resendiz purchased his ticket in Dallas for a round trip from Dallas to Mexico. *See* TEX. R. APP. P. 38.1(g) ("In a civil case, the court will accept as true the facts stated unless another party contradicts them.").

special appearance and attached their own evidence, including deposition testimony; website screen captures; and photographs of advertising, bus tickets, and buses. Appellees argued that this evidence showed that Conexiones advertised in Texas, sold bus tickets to Texas residents, and transported customers to and from Texas.

On March 30, 2023, the trial court entered an order denying Conexiones's special appearance. This accelerated appeal timely followed.

**DISCUSSION**

**I.     STANDARD OF REVIEW**

We review a trial court's exercise of personal jurisdiction over a nonresident defendant de novo. *Steward Health Care Sys. LLC v. Saidara*, 633 S.W.3d 120, 125 (Tex. App.—Dallas 2021, no pet.) (en banc). When a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied. *Id.* "When the appellate record includes the reporter's and clerk's records, however, these implied findings are not conclusive and may be challenged for legal and factual sufficiency in the appropriate appellate court." *Id.* at 125–26. "When the relevant facts in a case are undisputed, an appellate court need not consider any implied findings of fact and considers only the legal question of whether the undisputed facts establish Texas jurisdiction." *Id.* at 126.

## II. APPLICABLE LAW

"A court must have personal jurisdiction over a defendant to issue a binding judgment." *LG Chem Am., Inc. v. Morgan*, 670 S.W.3d 341, 346 (Tex. 2023). Trial courts may exercise personal jurisdiction over a nonresident defendant if it is (1) authorized by the Texas long-arm statute, and (2) consistent with federal due-process guarantees. *Id.* (internal citations omitted). The Texas long-arm statute "reaches as far as the federal constitutional requirements for due process will allow." *State v. Volkswagen Aktiengesellschaft*, 669 S.W.3d 399, 412 (Tex. 2023). For example, the Texas long-arm statute permits a trial court to exercise personal jurisdiction over a defendant who "does business in this state," which is defined to include a nonresident defendant who "commits a tort in whole or in part in this state." *LG Chem*, 670 S.W.3d at 346 (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(2)). "However, allegations that a tort was committed in Texas do not necessarily satisfy the United States Constitution." *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 559 (Tex. 2018). To establish personal jurisdiction over a nonresident, federal due process requires that the nonresident must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)). The minimum-contacts inquiry is a "forum-by-forum" or "sovereign-by-sovereign" analysis that "examines the nature and extent of the

defendant's relationship to the forum to determine whether the defendant is amenable to general or specific jurisdiction." *Volkswagen*, 669 S.W.3d at 412 (quoting *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011)).

"There are two kinds of personal jurisdiction: 'general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction.'" *LG Chem*, 670 S.W.3d at 347 (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 371 (2021)); *see also Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007). General jurisdiction "arises when a defendant's contacts with the foreign state are so 'continuous and systematic' that the defendant is 'essentially at home'" in the forum state. *Volkswagen*, 669 S.W.3d at 412 (quoting *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 8 (Tex. 2021)). "Specific jurisdiction is different: It covers defendants less intimately connected with [the forum state], but only as to a narrower class of claims." *Id.* (quoting *Ford Motor Co.*, 592 U.S. at 359). "Courts can exert specific jurisdiction over a nonresident defendant when (1) the defendant engages in 'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum [s]tate' and (2) the plaintiff's claims 'arise out of or relate to' those forum contacts." *Id.* at 412–13 (quoting *Ford Motor Co.*, 592 U.S. at 359). Specific jurisdiction involves "a 'claim-by-claim' analysis that focuses on the relationship between the defendant, the forum state, and the operative facts of the litigation." *Id.* at 413 (quoting *Moncrief Oil Intern. Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013)).

A nonresident defendant may challenge the court's personal jurisdiction over him by filing a special appearance. *See* TEX. R. CIV. P. 120a. The plaintiff bears the initial burden to plead sufficient allegations to bring the defendant within the long-arm statute's reach. *LG Chem*, 670 S.W.3d at 346. The burden then shifts to the defendant to negate all bases of personal jurisdiction alleged by the plaintiff. *Id.* The defendant can meet this burden on either a factual or legal basis. *Id.* To challenge the plaintiff's allegations on a factual basis, the defendant "can present evidence that contradicts the plaintiff's factual allegations supporting the assertion of personal jurisdiction," at which point the burden shifts to the plaintiff to "respond with its own evidence supporting its allegations." *Id.* To challenge the plaintiff's allegations on a legal basis, the defendant "can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish personal jurisdiction." *Id.*

## III. DISCUSSION

In four issues, Conexiones challenges the trial court's denial of its special appearance, contending that the trial court erred in (1) the implied finding of specific jurisdiction; (2) the implied finding of general jurisdiction; (3) the implied finding that Conexiones and Tornado are alter egos; and (4) considering incompetent evidence in support of personal jurisdiction over Conexiones. We consider each issue in turn.

## A. Specific Jurisdiction

When specific jurisdiction is asserted, "we focus the minimum-contacts analysis on 'the relationship among the defendant, the forum, and the litigation.'" *Moki Mac*, 221 S.W.3d at 575–76. For a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a "substantial connection" between those contacts and the operative facts of the litigation. *Id.* at 577. In determining whether the litigation has a "substantial connection" to the forum, we consider "what the claim is principally concerned with," whether the defendant's contacts will be "the focus of the trial," "consume most if not all of the litigation's attention," and are "related to the operative facts" of the underlying claim. *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016) (quoting *Moki Mac*, 221 S.W.3d at 585).

In their live pleadings, Appellees allege that Conexiones[4] had "a duty to use ordinary care in aiding and protecting its passengers" and "to exercise the highest degree of care in operating the carrier and in boarding and discharging passengers." Appellees claimed that Conexiones, through its employee, breached this duty in several ways, including:

---

[4] Although the first amended petition alleges that "Defendants" collectively were negligent, Appellees seek to impose liability on Conexiones through their theory of alter ego, which we will address below as part of Conexiones's third issue. Conexiones argues that the only jurisdictional fact alleged by Appellees, other than alter ego, is that Conexiones is a domestic corporation. Conexiones challenges both of these jurisdictional facts. However, for purposes of our jurisdictional analysis we address the factual assertions as if referring to Conexiones exclusively, accepting the reference to "Defendants" to include Conexiones for this limited purpose.

(1) in failing to keep a proper lookout for Plaintiffs' safety that would have been maintained by a person of ordinary prudence under the same or similar circumstances;

(2) in failing to apply the brakes of Defendants vehicle in order to avoid the collision;

(3) in failing to timely apply the brakes of Defendants vehicle in order to avoid the collision;

(4) in failing to take proper evasive action to avoid the collision;

(5) in failing to remain reasonably attentive to the traffic and other conditions existing on the roadway as a reasonably prudent person would have under the same or similar circumstances;

(6) in failing to sound the vehicle's horn;

(7) in Defendants inattention to the operation of the vehicle it was driving;

(8) in falling asleep while operating the vehicle Defendant was driving;

(9) in failing to control the speed of Defendants vehicle as a reasonable and prudent person would have under the same or similar circumstances existing at the time of the incident, which violates Texas Transportation Code §545.351;

(10) in driving Defendants vehicle at a speed greater than what was reasonable and prudent under the conditions existing at the time and having regard for the actual and potential hazards then existing in violation of Texas Transportation Code §545.351 (b)(l);

(11) in failing to control the speed of Defendants vehicle as necessary to avoid colliding with another person or vehicle that was on the highway in compliance with law and the duty of each person to use due care in violation of Texas Transportation Code §545.351 (b)(2);

(12) in Defendant's inattention to road signs;

(13) in failing to comply with traffic control devices in violation of Texas Transportation Code § 544.004;

(14) in operating the vehicle Defendant was driving while using a portable wireless communication device to read, write, or send an

electronic message while operating the vehicle while it was moving in violation of Texas Transportation Code§ 545.4251;

(15) in allowing and/or directing Defendants employee, servant, and/or agent driver to operate Defendant's vehicle for a greater amount of time than is safe;

(16) in allowing and/or directing Defendants employee, servant, and/or agent driver to operate Defendant's vehicle after inadequate rest;

(17) in failing to utilize proper safety equipment to prevent Defendants employee, servant, and/ or agent driver from falling asleep while driving Defendant's vehicle;

(18) in failing to aid and protect Defendants passengers; and

(19) in driving a vehicle on the wrong side of a divided highway, in violation of Texas Transportation Code§ 545.063[.]

In addition to negligence, Appellees included claims for negligent entrustment and negligent hiring, training, supervision, and retention, under theories of common carrier and respondeat superior.

All of Appellees' allegations in their first amended petition are "principally concerned with" either the driver's negligent operation of the bus or Conexiones's duty of care owed to plaintiffs through the stated acts or omissions of its "employee, servant and/or agent driver." The operative facts of the litigation are limited to questions of whether the bus driver acted as a reasonably prudent person while operating the vehicle and whether Conexiones acted as a reasonably prudent person in placing that driver behind the wheel. Despite Appellees' attempts to impose Texas motor-vehicle statutory requirements on Conexiones and its employee, there is no dispute that the acts and omissions Appellees complain of occurred in Mexico.

Therefore, the "focus of the trial" will not be on Conexiones's contacts with Texas, but rather its alleged negligence in Mexico. We conclude that there was insufficient evidence to create a substantial connection between these operative facts and our forum. *See LG Chem*, 670 S.W.3d at 349; *Moki Mac*, 221 S.W.3d at 585.

Appellees argue that Conexiones's "insistence that the operative facts of the litigation must connect to Appellant's contacts in Texas is based on outdated precedent." Relying on the U.S. Supreme Court's recent decision in *Ford Motor Co.*, Appellees argue Conexiones's contacts are "related enough" to their lawsuit to support specific jurisdiction. *See Ford Motor Co.*, 592 U.S. at 371. In that case, the Supreme Court considered whether Ford Motor Company could be held liable on products liability and negligence claims for accidents involving its cars in Montana and Minnesota, despite those cars having been sold elsewhere. *See id.* at 356–57. The relevant issue was whether the plaintiffs' claims arose out of or related to Ford's contacts with the forum states, the second prong of the specific-jurisdiction analysis. *See id* at 361–62. Ford argued that this test required the plaintiffs to prove a causal relationship between the plaintiffs' claims and Ford's connections with Montana and Minnesota. The Supreme Court disagreed, noting that while the phrase "arise out of" requires a causal connection, the phrase "relate to" does not. *Id.* at 362. Thus, the Court held that the lack of a causal connection between the incidents and the forum state was insufficient to deprive the Montana and Minnesota courts of personal jurisdiction over Ford. The Court explained:

–12–

To see why Ford is subject to jurisdiction in these cases . . . , consider first the business that the company regularly conducts in Montana and Minnesota. Small wonder that Ford has here conceded "purposeful availment" of the two States' markets. By every means imaginable— among them, billboards, TV and radio spots, print ads, and direct mail—Ford urges Montanans and Minnesotans to buy its vehicles, including (at all relevant times) Explorers and Crown Victorias. Ford cars—again including those two models—are available for sale, whether new or used, throughout the States, at 36 dealerships in Montana and 84 in Minnesota. And apart from sales, Ford works hard to foster ongoing connections to its cars' owners. The company's dealers in Montana and Minnesota (as elsewhere) regularly maintain and repair Ford cars, including those whose warranties have long since expired. And the company distributes replacement parts both to its own dealers and to independent auto shops in the two States. Those activities, too, make Ford money. And by making it easier to own a Ford, they encourage Montanans and Minnesotans to become lifelong Ford drivers.

Now turn to how all this Montana- and Minnesota-based conduct relates to the claims in these cases, brought by state residents in Montana's and Minnesota's courts. Each plaintiff's suit, of course, arises from a car accident in one of those States. In each complaint, the resident-plaintiff alleges that a defective Ford vehicle—an Explorer in one, a Crown Victoria in the other—caused the crash and resulting harm. And as just described, Ford had advertised, sold, and serviced those two car models in both States for many years. (Contrast a case, which we do not address, in which Ford marketed the models in only a different State or region.) In other words, Ford had systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege malfunctioned and injured them in those States. So there is a strong "relationship among the defendant, the forum, and the litigation"—the "essential foundation" of specific jurisdiction. That is why this Court has used this exact fact pattern (a resident-plaintiff sues a global car company, extensively serving the state market in a vehicle, for an in-state accident) as an illustration—even a paradigm example— of how specific jurisdiction works.

*Id.* at 364–66 (internal citations omitted). Thus, the Court concluded that in light of

the "veritable truckload of contacts" that Ford had with Montana and Minnesota . . .

–13–

[t]he only issue is whether those contacts are *related enough* to the plaintiffs' suits." *Id.* at 371 (emphasis added).

Appellees argue that the phrase "related enough" means that *Ford Motor Co.* replaced the Texas Supreme Court's "outdated precedent" requiring a substantial connection between the plaintiff's claims and the defendant's forum contacts in specific-jurisdiction cases.[5] *See TV Azteca*, 490 S.W.3d at 37. We disagree. First, as the Court observed in *Ford Motor Co.*, although the phrase "relate to" may not require a causal connection, "[t]hat does not mean anything goes." *Ford Motor Co.*, 592 U.S. at 362. "In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Id.* The Court in *Ford Motor Co.* was not suggesting that the stronger a defendant's forum contacts, the weaker the link may be between those contacts and the plaintiff's claims. In fact, the Court rejected that notion in an earlier case. In *Bristol-Myers Squibb*, the Court considered whether the test for specific jurisdiction was met when the plaintiffs sued in California for injuries allegedly arising from medication that was not prescribed, purchased, or ingested in California. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 265 (2017). The California Supreme Court had applied a "sliding-scale" approach to specific jurisdiction, in which "the more wide ranging the defendant's forum contacts, the

---

[5] We note that the Texas Supreme Court has expressly declined to address whether *Ford Motor Co.* abrogated the substantial-connection test. *See Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 16 n.5 (Tex. 2021).

more readily is shown a connection between the forum contacts and the claim." *Id.* at 260. The Supreme Court rejected this approach, calling it a "loose and spurious form of general jurisdiction."[6] *See id.* at 264.

Finally, we note that the Fifth Circuit, in considering this issue post-*Ford Motor Co.*, has held that the plaintiff must show "a strong relationship" among the defendant, forum, and litigation. *See Pace v. Cirrus Design Corp.*, 93 F.4th 879 (5th Cir. 2024). In *Pace*, the court considered whether a Mississippi court had jurisdiction over out-of-state companies for a negligence claim arising from a plane crash that occurred in Texas. *See id.* at 887. The court noted that the plaintiff's allegations "are not focused on obtaining the products or being directly injured by them in Mississippi, but on the effects of his Texas injury felt in Mississippi." *Id.* at 901. Relevant here, the Court explained that "[w]hen an accident occurs completely outside the state and has no connection to the state, specific jurisdiction is not present." *Id.* at 901–02.

Based on this precedent, we conclude that the Texas Supreme Court's "substantial connection" test was not abrogated by *Ford Motor Co.* As did the *Pace* court, we conclude that *Ford Motor Co.* is distinguishable on its facts. Unlike Ford, Conexiones has not conceded purposeful availment in Texas. Conexiones argues not only that it lacks Texas contacts, but also that it has structured its business in such a

---

[6] As previously mentioned, the test for general jurisdiction looks only to the strength of the defendant's contacts with the forum state. *See Volkswagen*, 669 S.W.3d at 412.

way as to *avoid* subjecting itself to personal jurisdiction here. *See LG Chem*, 670 S.W.3d at 350 (citing *Ford Motor Co.*, 592 U.S. at 368 (observing that clear notice of a state's potential exercise of jurisdiction allows a defendant to structure its primary conduct to "lessen or even avoid the costs of state-court litigation")). In support of its special appearance, Conexiones attached the affidavit of Adriana Lopez, who testified to the following:

> Conexiones is a Mexican corporation licensed to do business in Mexico and that does not do business, and has not done business, in the state of Texas at any point in time relevant to the claims and allegations asserted in this lawsuit. In fact, Conexiones does not have the necessary permits and licenses to transport passengers in Texas. It maintains its principal place of business in Monterrey, Mexico.

> In addition, Conexiones does not maintain a business office, manufacturing facility, design or testing facility, distribution center, sales office, service center, or any other place of business in Texas. Likewise, Conexiones does not have any officers, directors, or employees located or based in Texas. Conexiones does not maintain any bank account in Texas and does not pay taxes in Texas, nor is it required to do so as far as I know. Conexiones does not advertise or market its services in the state of Texas.

> Conexiones is a completely different company than Tornado Bus Company. Conexiones does not have or maintain a registered agent for service of process in Texas. Juan Vazquez, the owner of Tornado Bus Company, is not the registered agent for Conexiones. Conexiones registered office for service of process is in Monterrey, Mexico. Conexiones and Tornado Bus Company do not share common employees, offices, or bank accounts.

> Conexiones owned the bus and employed the driver involved in the accident alleged by Plaintiffs on December 29, 2017. The standard and typical process involving Conexiones' bus drivers entails the drivers picking up passengers at a location in Mexico and driving them to the USA-Mexico border. At the border, a driver employed by Tornado Bus Company then drives the passengers to their respective final

destinations across the United States. This standard and typical process was followed regarding the bus and bus driver, Raul Rodriguez, involved in the accident transporting Plaintiffs on December 29, 2017. The accident involving Plaintiffs occurred while the Conexiones employed bus driver was driving in Mexico, specifically in the state of San Luis Potosi.

In their response to the special appearance and through live testimony at the hearing thereon, Appellees offered evidence tending to dispute some of Lopez's claims.[7] First, Appellees contended that according to Conexiones's own website, it maintained seventeen offices in Texas. Appellees attached the following images captured from Conexiones's and Tornado's websites:



---

[7] Conexiones objected to this evidence, but no ruling is found in the record. We address Conexiones's challenges under its fourth issue.



Appellees also attached excerpts of the deposition of Carlos Rodriguez, one of Conexiones's corporate representatives, to support their contention that Conexiones sells tickets to customers in Texas. Rodriguez testified as follows:

> Q. [by Appellees' counsel] If a customer in Texas wanted to book a trip from Texas to Mexico with Conexiones Tornado, how would that work?
>
> A. That person would buy the ticket at its origin in Texas in order to arrive in Mexico.
>
> Q. And when they purchase the ticket in Texas, would it be through Tornado Bus Company?
>
> A. Yes, that's correct.

Finally, in a supplemental brief in opposition to Conexiones's special appearance, Appellees attached excerpts of the deposition of Jose Banda, another Conexiones representative. Banda testified about the revenue-sharing agreement between Conexiones and Tornado:

> Q. So what you're telling us is that [Conexiones] makes a commission on the miles that are traveled in the United States, right?

A. That's right.

Q. So if it's 500 miles from the border to Dallas, [Conexiones] is going to make a commission on that 500 miles, right?

[Conexiones's counsel]: Objection, form.

A. Yes.

. . .

Q. Conexiones gets a commission on the mileage traveled by Tornado Bus Company, right?

A. Yes, that's right. And in addition, a commission for the service of the sale.

Q. Ah. Okay. So they get the commission of the mileage, plus an additional 10 percent on the sale that they, themselves, generated?

A. That's right, because Mexico is functioning, you could say, as a sales agent.

Appellees argue that by maintaining offices in Texas, selling tickets to Texas residents, and sharing revenue from those tickets, Conexiones has purposefully availed itself of the Texas forum and has therefore subjected itself to suit here.

Conexiones responds that Appellees have mischaracterized this evidence. Conexiones points out that according to Rodriguez, the locations shown on its website are bus terminals, not offices. Conexiones also argues that the revenue-sharing agreement between it and Tornado is further evidence of its purposeful *avoidance* of the Texas forum.

We need not resolve these factual disputes. In the specific-jurisdiction analysis, our task is not to resolve merely whether Conexiones has Texas contacts, but whether and to what extent there is a connection between those contacts and the

operative facts of the case. In other words, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place *in the forum State* and is therefore subject to the State's regulation.'" *Ford Motor Co.*, 592 U.S. at 359–60 (emphasis added) (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017)). In *Ford Motor Co.*, the Supreme Court held that the test for specific jurisdiction was met because the "resident-plaintiffs allege[d] that they suffered in-state injury because of defective products that Ford extensively promoted, sold, and serviced in Montana and Minnesota." *Id.* at 371. The facts before us are different, as Appellees allege that they suffered an *out-of-state* injury because of Conexiones's negligence in operating a bus, the tickets for which were advertised and sold in Texas. Unlike Montana and Minnesota in *Ford Motor Co.*, Texas has no interest in regulating the operation of a Mexican bus on Mexican roads by a Mexican driver. On this record, we cannot conclude that Conexiones's contacts with Texas are sufficiently related to the operative facts of the case to support specific jurisdiction. *See Transportes Zima Real S.A. de C.V. v. Benitez*, No. 14-22-00388-CV, 2023 WL 2026767, at *4 (Tex. App.—Houston [14th Dist.] Feb. 16, 2023, pet. denied) (no specific jurisdiction over Mexican bus company where plaintiffs alleged injuries resulting from bus crash in Mexico). [8]

---

[8] Appellees argue that *Benitez* is distinguishable because the plaintiffs in that case did not purchase their tickets in Texas. However, that fact was irrelevant in the *Benitez* court's analysis. The plaintiffs argued

We conclude that there was legally insufficient evidence to support the trial court's implicit finding of specific jurisdiction. We sustain Conexiones's first issue.

## B. General Jurisdiction

In their second issue, Conexiones argues that the trial court erred to the extent it denied the special appearance on general-jurisdiction grounds. General jurisdiction "arises when a defendant's contacts with the foreign state are so 'continuous and systematic' that the defendant is 'essentially at home.'" *Volkswagen*, 669 S.W.3d at 412. There are "two paradigmatic bases for general jurisdiction over a corporation: its state of incorporation and the state of its principal place of business." *Forever Living Prods. Int'l, LLC v. AV Europe GmbH*, 638 S.W.3d 719, 724 (Tex. App.—Dallas 2021, no pet.) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). A company's principal place of business is its "nerve center"; that is, the place where its officers direct, control, and coordinate its activities. *Id.* (citing *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010)).

Here, the evidence fails to support general jurisdiction. Lopez's affidavit confirms that Conexiones is a Mexican company with its principal place of business in Mexico. Even if Conexiones's Texas contacts are as extensive as Appellees

that the defendant "targeted Texas as a market because they purchased the bus ticket with the sole intention of obtaining services in Texas." *Benitez*, 2023 WL 2026767, at *4. The court rejected that argument, explaining that "[t]he operative facts in this case do not relate to ticket sales in Mexico but rather Transportes' negligent operation of a bus in Mexico that resulted in injuries." *Id.* at *5. In other words, the court's holding was based not on where the tickets were purchased, but on where the accident occurred. *See id.* We agree and conclude that "[t]he operative facts of this case do not relate to ticket sales in [Texas], but rather [Conexiones's] negligent operation of a bus in Mexico that resulted in injuries." *See id.*

contend, that does not mean Texas is the company's "nerve center." *See, e.g.*, *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 414 (2017) (holding that general jurisdiction over railroad company did not exist in Montana despite company having over 2,000 employees, and having laid over 2,000 miles of tracks, in the state). To the extent Conexiones does indeed have seventeen offices in Texas, there is no evidence of what activities occur at those offices. Absent evidence that Conexiones's officers direct, control, and coordinate Conexiones's business activities in Texas, we cannot say that the company's "nerve center" is located in Texas. *See Forever Living*, 638 S.W.3d at 724.

We conclude that there was legally insufficient evidence to support the trial court's implicit finding of general jurisdiction. We sustain Conexiones's second issue.

### C.    Alter Ego

In its third issue, Conexiones complains that there was insufficient evidence to support the trial court's implicit finding of alter ego. We agree.

Personal jurisdiction may exist over a nonresident defendant "if the relationship between the foreign corporation and its parent corporation that does business in Texas is one that would allow the court to impute the parent corporation's 'doing business' to the subsidiary." *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 798 (Tex. 2002). Courts may exercise jurisdiction in such cases because "the parent corporation exerts such domination and control over its subsidiary 'that

–22–

they do not in reality constitute separate and distinct corporate entities but are one and the same corporation for purposes of jurisdiction.'" *Id.* (quoting *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983)). Because the law presumes that two separate corporations are indeed distinct, the party seeking to ascribe one corporation's actions to another on an alter-ego theory must prove the allegation. *Id.*

To prove that a parent company is the alter ego of its subsidiary, the evidence must show that the parent "controls the internal business operations and affairs of the subsidiary." *Id.* at 799. The degree of control "must be greater than that normally associated with common ownership and directorship; the evidence most show that the two entities cease to be separate so that the corporation fiction should be disregarded to prevent fraud or injustice." *Id.* The corporate separateness will not be disregarded "merely because of stock ownership, a duplication of some or all of the directors or officers, or an exercise of the control that stock ownership gives to stockholders." *Id.*

Here, Appellees alleged in their first amended petition that Conexiones was an alter ego of Tornado:

> Tornado is the umbrella, and parent company, of [Conexiones], and they are Tornado's alter ego. They are all marketed and advertised under the "Tornado" umbrella, the bus manifests all say "Tornado Bus Company", the bus tickets all say Tornado Bus Company. . . . "Conexiones" is [] an alter ego of Tornado Bus Company, under the same "Tornado" umbrella, and operating under the same company structure, and is a shell company for Tornado Bus Company.

The evidence relied on by Appellees to support their alter-ego theory includes the following: (1) Conexiones and Tornado have a common owner; (2) the two companies share revenue; (3) the two companies have the same motto; (4) the two companies advertise that they have offices in the same locations; (5) Tornado employees informed appellee Liliana Garcia that the round-trip tickets "were all one company"[9]; and (6) the tickets sold by Tornado listed both companies' names. None of this evidence relates to the degree of control that Tornado exercised over Conexiones, save possibly the first point—that the two companies share a common owner. But the mere fact of common ownership, without more, is insufficient to prove alter ego. *See id.* at 798–99.

We conclude that the evidence was legally insufficient to support the trial court's implicit finding that Conexiones was the alter ego of Tornado. We sustain Conexiones's third issue.

### D.    Evidentiary Objections

In its fourth issue, Conexiones complains that the trial court erred to the extent it considered incompetent evidence in support of its jurisdictional findings. Specifically, Conexiones complains that (1) certain statements attributed to its unnamed employees were hearsay; (2) Appellees failed to authenticate photographs of Conexiones's advertisements; and (3) Appellees failed to authenticate screenshots

---

[9] In the trial court, Conexiones objected to this statement as hearsay, and the trial court's failure to rule on that objection is one of the bases for Conexiones's fourth issue.

of Conexiones's and Tornado's websites. Because we have sustained Conexiones's first three issues despite these objections, we need not consider whether the trial court erred in overruling or failing to rule on them.

## CONCLUSION

We reverse the trial court's order denying Conexiones's special appearance and render judgment dismissing Conexiones for want of personal jurisdiction.

/Bonnie Lee Goldstein/
BONNIE LEE GOLDSTEIN
JUSTICE

230353F.P05

–25–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CONEXIONES TORNADO S. DE RL. DE. CV, Appellant

No. 05-23-00353-CV       V.

ROSA RAMIREZ DE MUNOZ, INDIVIDUALLY, AND A/N/F OF R.M., A MINOR, VALENTIN GARCIA, ANGELA GARCIA, LILIANA GARCIA, TOMAS GARCIA, HONORIO RESENDIZ, AND ZEFERINO GARCIA, Appellees

On Appeal from the 101st Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-19-15810. Opinion delivered by Justice Goldstein. Justices Carlyle and Breedlove participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and judgment is **RENDERED** dismissing appellee CONEXIONES TORNADO S. DE RL. DE. CV for want of jurisdiction.

It is **ORDERED** that appellant CONEXIONES TORNADO S. DE RL. DE. CV recover its costs of this appeal from appellees ROSA RAMIREZ DE MUNOZ, INDIVIDUALLY, AND A/N/F OF R.M., A MINOR, VALENTIN GARCIA, ANGELA GARCIA, LILIANA GARCIA, TOMAS GARCIA, HONORIO RESENDIZ, AND ZEFERINO GARCIA.

Judgment entered this 23rd day of September, 2024.